UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| Carolyn M. Mack,<br>*Plaintiff*,<br><br>v.<br><br>Michael J. Astrue, Commissioner of Social Security,<br>*Defendant*. | Civil No. 3:09cv2122 (JBA)<br><br><br><br>March 27, 2011 |

RULING ON RECOMMENDED RULING

Plaintiff Carolyn Mack commenced this action under Section 205(g) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), as amended. She seeks review of a final decision by the Commission of Social Security denying Plaintiff Insurance Benefits. Magistrate Judge Margolis [Doc. # 13] recommended denying Plaintiff's [Doc. # 8] Motion for Judgment on the Pleadings and granting Defendant's [Doc. # 11] Motion for Order Affirming the Decision of the Commissioner. Plaintiff now objects to the Recommended Ruling, on the basis that Administrative Law Judge ("ALJ") Eileen Burlison failed to follow the treating physician rule and failed to properly evaluate Mack's credibility. For the following reasons, the Recommended Ruling will be adopted, Plaintiff's motion will be denied, and Defendant's motion will be granted.

I.      Background

The Court presumes familiarity with the Magistrate Judge's Recommended Ruling, in which the factual background is described at length. Mack first suffered a heart attack in 2001. She was treated by Doctors Pamela Randoph and Stephen Rossner, a cardiologist, who have treated her since. In April 2006, she was hospitalized at Middlesex Hospital for three days after collapsing from a possible heart attack while at church. Mack filed an

application for DIB on June 1, 2006, claiming that a heart condition, heart attack, and arthritis rendered her unable to perform substantial gainful employment activity since April 1, 2006. Mack claims that her heart condition worsens when she tries to work because of limited use of her heart and that the surgical placement of the defibrillator leaves her "stressed out and tired." (Tr. at 43.) She suffers from arthritis on the right side of her body, from her knee to hip, and the right side of her back, causing her to walk with a limp. On April 4, 2008, Dr. Rossner diagnosed Mack with New York Heart Association Class III heart failure, stating that her primary symptoms were dyspnea (shortness of breath) and fatigue, which were "consistent with the patient's physical . . . impairments" and brought on by physical exertion, and which were prone to give her good days and bad days and would increase if Plaintiff was placed in a competitive work environment. (*Id.* at 411–13.) Mack has claimed that when she owned a bar, she had a "serious drinking problem," however she also testified before ALJ Burlison that she never had an alcohol problem. (*Id.* at 49.)

II. Discussion[1]

    A. The Treating Physician Rule

        *1. Controlling weight*

Plaintiff objects to Magistrate Judge Margolis's determination that ALJ Burlison did not err in giving the opinion of the treating board–certified cardiologist, Dr. Rossner, less than controlling weight[2] because Rossner's opinion was contradicted by his treatment

---

[1] Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 72.2(b), the portions of the Magistrate Judge's decision objected to by Plaintiff are reviewed *de novo*, and any part or the entirety of the Recommended Ruling may be adopted, rejected, or modified.

[2] In the event a medical opinion is not given controlling weight under the "treating physician" rule, the regulations provide factors to consider in deciding the weight to give to

2

records. The Social Security Regulations direct ALJs to "give more weight to opinions from . . . treating sources, since these sources are likely to be medical professionals most able to provide a detailed, longitudinal picture of . . . medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 404.1527(d). ALJs are instructed to give treating sources' opinions controlling weight when their opinion is "well–supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id*; *see also Rosa v. Callahan*, 168 F.3d 72, 78–79 (2d Cir. 1999) ("The opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with the other substantial evidence.").

As noted in the Recommended Ruling, ALJ Burlison recognized that Dr. Rossner's conclusions about Mack's condition were not supported by Rossner's own contemporaneous medical treatment records. Although Dr. Rossner concluded on April 4, 2008 that as early as April 2006, Mack's shortness of breath and fatigue caused by her heart condition limited her ability to work, his notes from examinations between April 2006 and December 2007

---

any medical opinion, including: (1) the "examining relationship"—more weight is given "to the opinion of a source who has examined [a patient] than to the opinion of a source who has not"; (2) the "treatment relationship"—more weight is given "to opinions from . . . treating sources"; (3) "supportability"—"[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"; (4) "consistency"—"the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"; (5) "specialization"—"more weight [is given] to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d).

describe Mack as doing well from a cardiac standpoint and not experiencing shortness of breath.[3]

Mack nonetheless argues that a treating physician's opinion, and not his or her notes, is what matters for an ALJ's determination, and there is no requirement in the Social Security Act or Regulations that "physicians document every abnormal finding at each visit." (Obj. at 1.) She relies on cases from the Third, Eighth, and Ninth Circuits that distinguish doctors' notes for the purposes of treatment from those doctors' ultimate opinions. *See Brownawell v. Astrue*, 554 F.3d 352, 356 (3d Cir. 2008) (distinguishing "between a doctor's notes for purposes of treatment and that doctor's ultimate opinion on the claimant's ability to work."); *Leckenby v. Astrue*, 487 F.3d 626, 633 n.7 (8th Cir. 2007) ("It does not seem unusual that a physician would see no need to make specific treatment notes on an unemployed patient's need for work breaks during a routine medical examination."); *Orn v. Astrue*, 496 F.3d 625, 634 (9th Cir. 2007) (a medical condition need not be "mentioned in

---

[3] Dr. Rossner's notes reflect that upon discharge from Middlesex Hospital, Mack "state[d] she feels fine," and "[h]er chest is clear," "abdomen is normal," and "[c]ardiac exam is unchanged." (*Id.* at 402.) Rossner nonetheless ordered a Adenosine Cardiolite stress test and Holter Monitor test, which yielded "[n]ormal [a]denosine infusion" and demonstrated "[n]o perfusion abnormalities." (*Id.* at 270–73.) On May 18, 2006, Dr. Rossner again noted that Mack reported "feeling fine," noted that "[s]he has had no more episodes of syncope or dizziness," her pulse was regular, "her chest [wa]s clear," and her "[c]ardiac exam was normal." (*Id.* at 263.) On October 4, 2006, Dr. Rossner noted that Mack "is doing well with her defibrillator . . . has had no shortness of breath or chest pain," had a clear chest and normal cardiac exam, although Mack "is tired all the time." (*Id.* at 262.) Again on January 4, 2007, Dr. Rossner noted that Mack "has been doing quite well," experiencing no shortness of breath or palpitations, with a clear chest and normal chest exam. (*Id.* at 261.) On March 28, 2007, he wrote "[f]rom a cardiac standpoint, [Mack] actually has been doing well." (*Id.* at 258.) On December 6, 2007, Dr. Rossner wrote that Mack had not visited him in a while and "[s]tates she has been feeling good," with no shortness of breath, palpitations, chest pain, peripheral edema, or heart murmurs. (*Id.* at 391.)

every report to conclude that a physician's opinion is supported by the record"). However, here, Dr. Rossner's treatment notes are actually inconsistent with and undermine his ultimate opinion that Mack suffered from shortness of breath and fatigue to the point of disability. Accordingly, Dr. Rossner's notes reflecting repeated visits and examinations are substantial evidence that Mack did not experience shortness of breath or fatigue to the point at which she could not work, such that ALJ Burlison could properly determine that Dr. Rossner's opinion was not entitled to controlling weight.

### 2. *Gleaning ALJ's rationale from the record*

Mack next objects to Magistrate Judge Margolis's determination that the ALJ was not required to discuss in detail what weight she afforded to the opinions of Dr. Rossner and those of Dr. Marino, Mack's orthopedist who reported in July 2007 that Mack was doing quite well after hip surgery, had been disabled for at least the prior six months, and noted that he did not know how long Mack would be disabled, suggesting that Mack's orthopedic surgeon Dr. John Aversa could provide guidance on Mack's prognosis. As to Dr. Rossner, Magistrate Judge Margolis explained that in light of Dr. Rossner's notes and the lack of evidence of shortness of breath, cited by ALJ Burlison in denying Mack's application for benefits, "the evidence of the record permits us to glean the rationale of an ALJ's decision," and therefore, "we do not require that [the ALJ] . . . explain[] why he [or she] considered particular evidence unpersuasive or insufficient to lead him [or her] to a conclusion of disability." (Rec. Rul. at 37 (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).) As to Dr. Marino, Magistrate Judge Margolis explained that ALJ Burlison did not err in not giving controlling weight to, or describing the amount of weight given to, his opinion that Mack was disabled in the previous six months, given Dr. Marino's explanation that Mack's

5

condition would improve after hip surgery, which improvement could be more accurately assessed by Dr. Aversa. (*Id.* at 39.)

Mack argues that Magistrate Judge Margolis's reliance on *Mongeur* is misplaced and that the ALJ was required to detail why she did not find either doctor's opinion persuasive, in light of the Second Circuit's subsequent observation in *Halloran v. Barnhart* that "[w]e do not hesitate to remand when the Commission has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." 362 F.3d 28, 33 (2d Cir. 2004). However, even after *Halloran*, the Second Circuit has relied on *Mongeur* in reiterating that while the Commission must give "good reasons" for the weight given to the treating source's opinion, where the record allows for a judicial fact–finder to "glean" the rationale, the ALJ need not mention every item of testimony or explain why she considered particular evidence unpersuasive or insufficient to lead to a conclusion of disability. *Petri v. Astrue*, No. 10–2070–cv, 2011 WL 781901 (2d Cir. Mar. 8, 2011) (citing *Mongleur*, 722 F.2d at 1040).

From the evidence of and the ALJ's reliance on Dr. Rossner's notes and observations during treatment that Mack was doing well and experienced no shortness of breath, the Court can glean the ALJ's rationale for finding Dr. Rossner's opinion to the contrary unpersuasive, namely that it was contradicted by his own earlier evaluations. ALJ Burlison cited Dr. Marino's recommendation that Dr. Aversa provide medical prognoses and also referred to Dr. Aversa's treatment notes, which indicated that by November 2007, Mack suffered from only occasional thigh discomfort but was capable of standing on one leg. From this evidence, the Court can readily glean ALJ's rationale for not giving Dr. Marino's

6

opinion controlling weight or ultimately relying on it, i.e., it was limited to a six–month period and deferred to another doctor for evaluation of Mack's future disability. Accordingly, the ALJ did not err in failing to explain in further detail why she considered evidence unpersuasive or insufficient.

B.    Plaintiff's Credibility

Mack objects to Magistrate Judge Margolis's conclusion that the ALJ properly discredited Mack's testimony on the basis of inconsistencies in describing her past work and in describing her history of alcohol use. The ALJ determined that Mack "is not entirely credible in her testimony due to several inconsistencies," specifically (1) she "denied any alcohol involvement and the record reveals a long and strong indication of significant alcohol abuse"; (2) she "alleges that she cannot move about freely due to her arthritis but there is no indication of this in the record which indicates that she has done quite well"; and (3) she "has testified that her past relevant work as a sales auditor required her to perform duties that were in excess of the sedentary range of exertional requirement when all prior evidence clearly reports otherwise." (Tr. at 18.)

"The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Pietrunti v. Director, Office of Workers' Compensation Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). When assessing a claimant's credibility, an ALJ must consider the entire case record, and "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." *See* SSR 96–7p, 1996 WL 374186, *5 (S.S.A. July 2, 1996).

Mack argues that other courts have expressed reservations about relying on inconsistencies in testimony about substance abuse as evidence of failings in credibility, citing *Robbins v. Commissioner of Social Security*, 466 F.3d 880, 884 (9th Cir, 2006), in which the ALJ's "cursory finding that a single line of testimony" about alcohol abuse, without references to the record discrediting the claimant's testimony, was insufficient to justify an adverse credibility finding, and *McClesky v. Astrue*, 606 F.3d 351, 353 (7th Cir. 2010), in which the court explained that although "lack of candor on" the subject of drug–use "reveals that [the plaintiff] is willing to lie about subjects in order to promote her self–interest," the ALJ failed to address the "possibility that [the plaintiff] had been afraid to admit to an official that she had been until recently (and perhaps still is) committing crimes." Neither of these cases supports Mack's argument that the ALJ should not have considered Mack's inconsistencies in testifying about non–criminal alcohol use in assessing her credibility. The Ninth Circuit in *Robbins* faulted the ALJ's failure to specifically reference any record evidence supporting his conclusory determination that the claimant did not testify truthfully about alcohol consumption, but acknowledged that "conflicting or inconsistent testimony concerning alcohol use *can* contribute to an adverse credibility finding." 466 F.3d at 884 (emphasis added); *see also Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999) (finding applicant's testimony not credible where there was evidence of malingering and where the testimony and "various statements regarding his drinking were not consistent"). Here, the ALJ noted that the record "reveals a long and strong indication of significant alcohol abuse." (Tr. at 18.)

Because ALJs may rely on evidence of inconsistencies in describing alcohol abuse, which does not present the same concerns as drug abuse, and because the ALJ explained why

8

Mack's inconsistencies in discussing her alcohol consumption, in addition to other inconsistencies,[4] called her credibility into question, ALJ Burlison properly exercised her discretion to evaluate Mack's credibility.

III. Conclusion

For these reasons, Magistrate Judge Margolis's [Doc. # 13] Recommended Ruling is ADOPTED and APPROVED. Accordingly, Plaintiff's [Doc. # 8] Motion for Judgment on the Pleadings is DENIED, and Defendant's [Doc. # 11] Motion to Affirm is GRANTED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 27th day of March, 2011.

---

[4] Mack also argues that the ALJ should not have considered inconsistencies in her descriptions of work functions in assessing the credibility of her assertions as to the severity of her pain and limitations, because what she is required do at work is immaterial to the intensity, persistence, and limiting effects of her symptoms. While Mack's inconsistencies in describing her work functions do not implicate her symptoms, they can call into question her general truthfulness, and ALJs are directed to consider consistency internally and with other information in the case record in assessing the credibility of an individual's statements on the "individual's functional limitations a restrictions due to pain or other symptoms." SSR 96–7P, 1996 WL 374186 at * 3. Thus, the ALJ properly considered Mack's inconsistent descriptions of her work functions in considering her general credibility for purposes of assessing her descriptions of the intensity, persistence, and limiting effects of her symptoms.

9